# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3689

_____

United States of America

*Plaintiff - Appellee*

v.

Dereld Humphrey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 17, 2014
Filed: July 18, 2014

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Dereld Humphrey pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Humphrey as an armed career criminal, see 18 U.S.C. § 924(e)(1), and imposed the

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

statutory mandatory minimum sentence of 180 months' imprisonment. Humphrey appeals, arguing that the district court erred in sentencing him as an armed career criminal because he does not have three predicate offenses as required by § 924(e)(1). We affirm.

## I. Background

After Humphrey pleaded guilty to being a felon in possession of a firearm, a probation officer prepared a presentence investigation report (PSR) and recommended that Humphrey be sentenced under the Armed Career Criminal Act (ACCA). The ACCA imposes a mandatory minimum fifteen-year prison sentence on a defendant who violates § 922(g)(1) and "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" § 924(e)(1).

The PSR identified three of Humphrey's prior convictions as the basis for this recommendation: a first-degree assault conviction, a first-degree robbery conviction, and an armed criminal action conviction. These convictions arose from crimes that Humphrey committed over the course of two days when he was fifteen years old. Specifically, on December 10, 1995, at approximately 6:20 p.m., Humphrey and at least one other individual approached a man in a parking lot in St. Louis, Missouri, pointed a gun at the man, and ordered the man to give them his money. Before the man could comply, Humphrey's cohort shot the man. Approximately fifteen minutes later and three blocks away, Humphrey and at least one other individual approached a woman, threatened her with a gun, and forcibly stole her money and food stamps. At approximately 6:30 p.m. on December 11, 1995, Humphrey and at least one other individual approached a woman as she exited her vehicle, pointed a gun at her, and demanded that she give them her money. When she refused, Humphrey's cohort struck the woman in the head with the gun. Humphrey pleaded guilty to the three offenses set forth above as a result of his involvement in these incidents.

-2-

At his sentencing for the felon in possession offense, Humphrey objected to the PSR's recommendation that he be sentenced as an armed career criminal. He did not contest that his three prior convictions were for violent felonies, nor did he challenge the determination that his armed criminal action conviction, which stemmed from the December 11, 1995, incident, constituted a predicate offense for purposes of the ACCA. Instead, Humphrey argued that his convictions for the first-degree assault and first-degree robbery December 10, 1995, offenses should have counted as one predicate offense under the ACCA because they were not committed "on occasions different from one another," leaving him with only two of the three predicate offenses required to trigger application of the ACCA. The district court overruled Humphrey's objection, determining that the two December 10 offenses were committed on different occasions and that Humphrey was thus subject to an enhanced sentence under the ACCA.

## II. Discussion

The sole issue on appeal is whether the district court erred in concluding that Humphrey's convictions for first-degree assault and first-degree robbery each constituted a predicate offense for purposes of the ACCA. "We review *de novo* whether a prior conviction is a predicate offense under the ACCA." United States v. Van, 543 F.3d 963, 966 (8th Cir. 2008). "To qualify as predicate offenses under the statute, each conviction must be a separate and distinct criminal episode, rather than part of a continuous course of conduct." United States v. Deroo, 304 F.3d 824, 828 (8th Cir. 2002). We have considered at least three factors "in deciding whether offenses are sufficiently separate and distinct . . . : (1) the time lapse between offenses, (2) the physical distance between their occurrence, and (3) their lack of overall substantive continuity, a factor that is often demonstrated in the violent-felony context by different victims or different aggressions." United States v. Willoughby, 653 F.3d 738, 742-43 (8th Cir. 2011).

Humphrey contends on appeal that the first-degree assault and the first-degree robbery were part of a continuous course of conduct because the offenses were committed by the same group of individuals, involved the same type of criminal conduct, and were committed fifteen minutes apart and within three blocks of each other. Humphrey relies on Willoughby and United States v. Petty, 828 F.2d 2 (8th Cir. 1987) (per curiam), to support this argument, but both cases are readily distinguishable. In Willoughby, we held that the defendant's drug sales to a confidential informant, and seconds later to a police officer who was standing next to the confidential informant, were part of one continuous course of conduct because the drug sales were "committed, in essence, simultaneously." 653 F.3d at 740-42. Similarly, in Petty, we held that the defendant's "simultaneous robbery of six individuals at a restaurant" constituted one predicate offense for purposes of the ACCA, even though the defendant was convicted of six counts of armed robbery as a result of his conduct. 828 F.2d at 3.

Unlike the offenses committed in Willoughby and Petty, the first-degree assault and the first-degree robbery offenses were not committed simultaneously. Rather, Humphrey committed the first-degree assault in one location against one victim, and then fifteen minutes later and three blocks away he committed the first-degree robbery against an unrelated victim. "[W]e have indicated that a criminal offense is a distinct criminal episode when it occurs in a different location and at a different time." United States v. Chappell, 704 F.3d 551, 552 (8th Cir. 2013). Moreover, we have held that "[c]rimes occurring even minutes apart can qualify [as separate and distinct criminal episodes] . . . if they have different victims and are committed in different locations." Deroo, 304 F.3d at 828. Our precedent thus makes clear that the December 10 offenses were separate and distinct criminal episodes rather than part of a continuous course of conduct. See Chappell, 704 F.3d at 552-53 (holding that, although the defendant committed all three offenses on the same day, the defendant's murder conviction was based on a criminal episode that was separate from his burglary and arson convictions because the defendant "committed the murder after

the [burglary and] arson, at a different location, and against a different victim"); Deroo, 304 F.3d at 828 (concluding that the defendant's three burglary convictions were each predicate offenses under the ACCA even if the three burglaries were committed within an hour of one another because they "involved breaking into three separate homes located on different lakes and unrelated victims"); United States v. Gray, 85 F.3d 380, 381 (8th Cir. 1996) (holding that the burglaries of two homes located in close proximity to one another within a span of twenty-five minutes were separate and distinct criminal episodes); United States v. Hamell, 3 F.3d 1187, 1191 (8th Cir. 1993) (concluding that the defendant's two assaults—the first occurring inside a tavern and the second involving a different victim outside the tavern twenty-five minutes later—were distinct criminal episodes). The district court thus did not err in holding that the first-degree assault and the first-degree robbery were committed "on occasions different from one another."

Humphrey further contends that we should consider two additional factors in determining whether the first-degree assault and the first-degree robbery were separate and distinct criminal episodes or part of a continuous course of conduct. He asserts that because he acted with at least one other individual in committing the offenses, we should consider whether "he intended to commit two separate acts." He also argues that we should take into account the fact that he was a juvenile at the time he committed the offenses.[2]  Humphrey, however, cites no authority to support his

---

[2]At oral argument, Humphrey's counsel clarified that Humphrey was not asserting an Eighth Amendment challenge to the use of juvenile convictions as predicate offenses for purposes of the ACCA.  Moreover, Humphrey's counsel acknowledged that other courts that have considered this issue have concluded that the use of juvenile conduct as the basis for an ACCA enhancement does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.  See United States v. Hunter, 735 F.3d 172, 176 (4th Cir. 2013); United States v. Orona, 724 F.3d 1297, 1309-10 (10th Cir. 2013); see also United States v. Hoffman, 710 F.3d 1228, 1229-33 (11th Cir. 2013) (per curiam) (deciding the issue under 21 U.S.C. § 841(b)(1)(A)(viii)).

claim that a court should examine a defendant's subjective intent or consider a defendant's juvenile status in deciding whether offenses are distinct criminal episodes under the ACCA, and we decline to do so in this case.

### III.  Conclusion

The judgment is affirmed.

———————————————